**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| B. Johnson,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-01230-PHX-DGC<br><br>**ORDER** |

Plaintiff B. Johnson seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the Administrative Law Judge ("ALJ") erred as described below, and the error was not harmless, the Commissioner's decision will be vacated and remanded for further proceedings.

**I.    Background.**

Plaintiff is a 60-year-old female who previously worked as a real estate agent, a server, and in various semiskilled to skilled jobs. Doc. 12 at 2-3; A.R. 55-56. On June 10, 2014, she applied for disability insurance benefits and supplemental security income, alleging disability beginning March 1, 2014. A.R. 27. On October 11, 2016, Plaintiff and a vocational expert ("VE") testified at a hearing before the ALJ. *Id*. On November 7, 2016, the ALJ held that Plaintiff was not disabled within the meaning of the Social Security

Act. A.R. 27-40. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. A.R. 1-3.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

**III.    The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) she is not currently working, (2) she has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") prevents her performance of any past relevant work. If the claimant meets her burden through step three, the Commissioner must find her disabled. If the inquiry proceeds to step four and the claimant shows that she is incapable of performing past relevant work, the Commissioner must show that the claimant is capable of other work suitable for her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018, and that she has not engaged in substantial gainful activity since March 1, 2014. A.R. 29. At step two, the ALJ found that Plaintiff has the following severe impairments: orthostatic tremor (intermittent) and recent diagnosis of Parkinson's syndrome. *Id*. at 19. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. *Id*. At step four, the ALJ found that Plaintiff has the following RFC:

> [Plaintiff can] perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally lift ten pounds and frequently lift less than ten pounds. The claimant can stand and walk one hour each in an eight-hour day. The claimant does not have any limitations for sitting. She does not use an assistive device for ambulating. The claimant's seeing, hearing, and speaking are unlimited. She can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. The claimant can stoop, kneel, crouch, crawl, reach, handle, finger, and feel frequently. The claimant has restrictions for working around heights and moving machinery. The claimant does not have any restrictions for working around

> extremes in temperature, working around or with chemicals, working around dusts, fumes, or gasses, or working around excessive noise.

*Id.* at 31. The ALJ found that Plaintiff is unable to perform any past relevant work. *Id.* at 37. The ALJ then determined that, considering the Plaintiff's "age, education, work experience, and [RFC], the [Plaintiff] has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." *Id.* at 38.

## IV. Analysis.

Plaintiff argues that the ALJ's decision is defective for four reasons: (1) the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Christopher T. Pullins; (2) the ALJ improperly rejected the opinion of the state's consultative examiner, Dr. Brian R. Briggs; (3) the ALJ improperly discredited Plaintiff's symptom testimony; and (4) the ALJ improperly weighed lay evidence provided by Plaintiff's husband. Doc. 12 at 1-2.

### A. Weighing of Medical Source Evidence.

#### 1. Legal Standard.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(1), (c).

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence,

including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted), or if there are significant discrepancies between the physician's opinion and claimant's clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation marks and citation omitted). Under either standard, "[t]he ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and internal quotation omitted).

### 2. Dr. Pullins.

Plaintiff's treating physician, Dr. Pullins, provided one letter and two assessments regarding Plaintiff's vocational limitations, opining that Plaintiff was unable to work. *See* A.R. 339; 354-55; 458-59. The ALJ gave the opinions little weight. A.R. 35.

#### a. Dr. Pullins's Opinions.

On November 11, 2014, Dr. Pullins wrote the social security office regarding Plaintiff. A.R. 339. He stated that Plaintiff had orthostatic tremor syndrome, the condition would not allow her to stand for any prolonged period of time, and the condition would make holding any gainful employment difficult. *Id*.

In his November 23, 2015 opinion, Dr. Pullins stated that Plaintiff suffered from imbalance, poor endurance, weakness, tremors in the hand, and shaky leg syndrome. A.R. 354. In an eight-hour day, Plaintiff could sit for more than two hours but less than three; lift more than ten pounds but less than fifteen; stand or walk less than two hours; and carry more than ten pounds but less than fifteen. *Id*. Dr. Pullins opined that Plaintiff must alternate between sitting, standing, and walking every 45-60 minutes, and with position changes Plaintiff would need to rest for five to nine minutes. *Id*. Plaintiff could use her hands and feet occasionally and reach, bend, and stoop less than occasionally. *Id*. Dr. Pullins stated that Plaintiff's dizziness, pain, and fatigue, caused severe limitations, and she could expect to miss more than six days of work every month. *Id*. at 355.

In his September 1, 2016 opinion, Dr. Pullins listed Plaintiff's impairments as Parkinson's disease and orthostatic tremors. A.R. 458. He opined that in an eight-hour day Plaintiff could sit less than two hours, lift less than ten pounds, stand or walk less than two hours, and carry less than two pounds. *Id*. Dr. Pullins noted that it was medically necessary for Plaintiff to change positions every one to twenty minutes, with a one to four minute break after changing position. *Id*. Plaintiff could use her right hand occasionally, but her left hand and feet less than occasionally. *Id*. Dr. Pullins stated that Plaintiff experienced pain, fatigue, dizziness, headaches, and tremors, and that the symptoms were moderately severe. A.R. 459. Plaintiff could expect to miss more than six days of work per month. *Id*.

### b. The ALJ's Opinion.

The ALJ provided a detailed summary of the medical records and noted conflicting evidence. *See* A.R. 32-33. The ALJ concluded that objective findings supported Plaintiff's diagnosis of orthostatic tremor (intermittent) syndrome and Parkinson's syndrome, and considered those diagnoses when forming Plaintiff's RFC. A.R. 32. But the ALJ determined that the objective medical evidence failed to support Plaintiff's alleged limitations and symptoms. *Id*.

The ALJ found Dr. Pullins's opinions inconsistent with the objective medical evidence. A.R. 35. Specifically, the ALJ cited Dr. Briggs's March 2013 consultative exam, which found that Plaintiff's gait was normal, she had a full range of motion in her shoulders, elbows, wrists, hips, knees, ankles, and spine, and her hands did not lack the ability to perform rapid alternating movements. *Id.*; *see* A.R. 340-42. The ALJ also noted a December 2015 examination where the Plaintiff was able to rise from a chair unassisted with her arms crossed, her gait was normal, and she had normal posture. A.R. 410-11.

Because Dr. Pullins's opinions were contradicted by the other medical opinions in the record, the ALJ could reject them for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

### c. Discussion.

Plaintiff argues that the ALJ improperly substituted his own opinion for that of the medical doctors and failed to explain why the noted findings were inconsistent with Dr. Pullins's assessments of Plaintiff's vocational limitations. *See* Doc. 12 at 11-12. Further, the ALJ improperly used specific notes of how Plaintiff presented at an appointment to determine that Plaintiff could sustain work over an eight-hour day. *Id.* at 13.

The Court agrees with Plaintiff and finds that the ALJ failed to explain why the specified appointment observations contradicted Dr. Pullins's assigned limitations. As noted by the ALJ, Plaintiff was diagnosed with orthostatic tremor syndrome based on reported symptoms and a movement neurophysiology report. A.R. 308-10. Plaintiff experiences intermittent leg tremors that come on suddenly; vary in intensity, duration, and frequency; and cause shakiness and weakness that only disappears through sitting, lying down, or changing position. *See* A.R. 294; 298; 306; 310; 320; 410. In her more recent records, Plaintiff reported two to three episodes per day, lasting about five minutes. A.R. 340. Plaintiff did not report any leg pain outside of these tremors. *See* A.R. 306. Plaintiff's symptoms are intermittent and do not appear to affect the functioning of her legs. In light of this record and the characteristics of Plaintiff's disabilities, particularly their intermittent nature, it is not clear how Plaintiff walking normally during a medical

appointment or having a full range of motion and the ability to get out of a chair with her arms crossed renders Dr. Pullins's interpretation of Plaintiff's symptoms and objective evidence untrustworthy.

Further, the ALJ ignored or diminished exam findings where Plaintiff demonstrated physical limitations related to her disorders. For example, in an April 2014 exam, Dr. Pullins noted that Plaintiff "gets uncomfortable [after standing for two to three minutes] and starts to mildly flex the knees and extends the knees on both legs intermittently." A.R. 33; 307. The ALJ noted this record, but then said: "However, [Plaintiff's] neurological examination was normal," without explaining why a normal exam was inconsistent with Dr. Pullins's observations. A.R. 33. The ALJ then cited Dr. Pullins's record indicating that Plaintiff was unable to balance on one foot and became shaky after two minutes of activity. A.R. 33; 352. The ALJ followed this with: "Despite this, her upper extremity strength was intact, she did not have any shaking in her hands, and she was able to complete tandem walking with difficulty." A.R. 33. Again, the ALJ did not explain why these upper extremity observations contradict her tremors and pain.

The ALJ has sufficiently set out a "detailed and thorough summary of the facts and conflicting evidence," *Revels*, 874 F.3d at 654, but the ALJ fails to "set forth [his] own interpretations and explain why they, rather than the doctors', are correct." *Garrison*, 759 F.3d at 1012; *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (the ALJ must build a "logical bridge" between the evidence and her conclusion). Thus, the ALJ erred by discrediting Dr. Pullins's opinions.

### d. Harmless Error.

The Court will not reverse an ALJ's decision if the error is inconsequential to the ultimate nondisability determination. *Molina*, 674 F.3d at 1111. During the hearing, the VE testified that an individual who could stand and sit for less than two hours a day would not be able to find full-time work. A.R. 77. The VE also testified that an individual that needed to take a four-minute break every twenty minutes would also be precluded from working. *Id.* Dr. Pullins's opinion indicated that Plaintiff would need to take breaks every

twenty minutes and could sit for less than two hours a day. *See* A.R. 458. Because the decision would have come out differently had the ALJ adopted Dr. Pullins's limitations, the Court cannot find this error harmless.

### 3. Dr. Briggs.

Dr. Briggs provided a consultative examination and a medical source statement regarding Plaintiff's ability to work. A.R. 340-46. Dr. Briggs limited Plaintiff to occasionally lifting or carrying ten pounds and frequently lifting and carrying less than ten pounds. A.R. 344. Plaintiff can stand less than two hours in an eight-hour day, but has no limitations for sitting. A.R. 344-45. Dr. Briggs also opined that Plaintiff could climb occasionally and frequently stoop, kneel, crouch, crawl, reach, handle, finger, and feel. A.R. 345. Dr. Briggs opined that Plaintiff "cannot complete an 8 hour day or a 40 hour work week." *Id*. This conclusion was based on Plaintiff's "orthostatic tremors which are brought on by standing and walking, [and Plaintiff's] anxiety and the associated weakness." *Id*.

The ALJ gave Dr. Briggs's opinion partial weight. A.R. 35. He gave great weight to Dr. Briggs's conclusions regarding lifting, carrying, walking, seeing, hearing, speaking, postural, and environmental limitations. *Id*. But he gave little weight to Dr. Briggs's opinion that Plaintiff could not complete an eight-hour day or a forty-hour work week, finding it inconsistent with the objective medical evidence. *Id*. The opinion of an examining physician, even if contradicted, can only be rejected for specific and legitimate reasons. *Lester*, 81 F.3d at 830-31.

Plaintiff argues that the ALJ improperly discredited Dr. Briggs's opinion because he cited the same evidence that he used to discredit Dr. Pullins's opinion. Doc. 12 at 21. But the ALJ essentially adopted Dr. Briggs's limitations as Plaintiff's RFC. A.R. 31. The ALJ used the limitations to question the VE about Plaintiff's vocational prospects. *See* A.R. 75.

The only portion of Dr. Briggs's opinions that the ALJ did not accept was his ultimate conclusion that Plaintiff could not work an eight-hour day and forty-hour week.

A.R. 35; 345. The ALJ is not bound by a medical provider's ultimate determination of a plaintiff's disability. *Mcleod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011). Medical opinions provide judgments about the nature and severity of Plaintiff's disability, but the determination that an individual cannot work or is disabled is one that is reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1) ("An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity."). The ALJ did not err by declining to accept Dr. Briggs's opinion on the ultimate question of disability.

### B. Plaintiff's Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015.

Plaintiff testified that she could sit for about an hour, but she would need to get up and stretch during that time. A.R. 61. Plaintiff also testified that she could not stand and she could walk about half a block. A.R. 62. She testified that she experiences tremors on a daily basis and they can last up to about five minutes. *Id.* When she experiences the tremors, she needs to sit down to make them stop. *Id.* Tremors start almost immediately upon standing or walking; Plaintiff normally can be on her feet for about five minutes. A.R. 64. Plaintiff testified that the tremors start in her legs and end in her hands. *Id.* When Plaintiff experiences tremors, she cannot write or use the phone. A.R. 65. Plaintiff stated that tremors can occur even when she is lying down. *Id.* Dealing with the tremors causes Plaintiff extreme fatigue, which she handles by lying down. A.R. 66. Plaintiff testified

that it can take a long time for her to get chores done. A.R. 67. She takes many breaks before finishing a task. *Id.* She testified that she takes medication for Parkinson's and anxiety, but side effects have kept her from taking medications in the past. A.R. 68. The tremors worsen with stress and cause the Plaintiff to experience anxiety. A.R. 73-74.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her statements "concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *See* A.R. 34. The ALJ identified the following reasons: (1) the objective medical evidence does not support Plaintiff's alleged symptoms and their limited effects; (2) the alleged severity of Plaintiff's symptoms is not consistent with the conservative treatment she received for her impairments, consisting only of a trial of gabapentin; and (3) the ALJ did not observe Plaintiff experience any tremors during the hearing. A.R. 34.

Plaintiff argues that (1) the ALJ did not explain how the cited medical records rendered her testimony untrustworthy; (2) the ALJ was not qualified to provide his own interpretation of the medical evidence as a basis for discrediting Plaintiff's testimony; (3) the ALJ improperly discredited Plaintiff's testimony based on conservative treatment without considering Plaintiff's reasons for conservative treatment or additional treatment that is available to Plaintiff; and (4) the ALJ's limited observations should not reflect on the credibility of the Plaintiff's testimony. *See* Doc. 12 at 16-19.

### 1. The ALJ's First Reason.

As indicated above, the Court agrees that the ALJ improperly discounted Plaintiff's symptom testimony based on evidence that her physical exams showed normal gait, full range of motion in her shoulders, elbows, wrists, hips, knees, ankles, and spine, and that in one appointment Plaintiff rose from a chair with her arms crossed. Plaintiff testified that she could walk to up to a half a block and that walking helps alleviate the tremor symptoms. A.R. 62-64. Her physical symptom testimony focused on pain that starts in her calves and

worsens if she does not sit down or walk around. *See* A.R. 63. The ALJ fails to explain why evidence of a normal gait, full range of motion, and the ability to rise from a chair negates Plaintiff's testimony. *See Krier v. Colvin*, No. 2:13-CV-1898-HRH, 2015 WL 159530, at *3 (D. Ariz. Jan. 13, 2015) ("[T]he ALJ failed to build the requisite 'logical bridge' between the evidence and her conclusion." (citing *Scott*, 647 F.3d at 740)).[1]

### 2. The ALJ's Second Reason.

In assessing Plaintiff's symptom testimony, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c). In some circumstances, evidence of conservative treatment may be sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). An ALJ may discount testimony for "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1112. The ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain" the claimant's failure to follow a treatment plan. *Orn*, 495 F.3d at 638 (quoting SSR 96-7p at 7-8).

Plaintiff testified to taking zeligan for Parkinson's disease and clonazepam and trying gabapentin for her orthostatic tremors. A.R. 68. The record indicates that Plaintiff initially delayed use of the gabapentin in June 2014, stating that she was concerned about the side effects and not in a lot of pain at that time. A.R. 33; 302. Plaintiff changed her mind in May 2015 as her condition worsened, but she discontinued use of gabapentin after about one month because it made her sleepy and unable to function. A.R. 351; 410. She was then started on clonazepam to help with orthostatic tremor. A.R. 411.

---

[1] The Commissioner argues that Plaintiff's testimony is inconsistent with evidence that she socialized with friends by phone, went out for lunch every two months, prepared light meals, completed light household chores, and used the computer. Doc. 16 at 8. But the ALJ did not discredit Plaintiff's testimony based on her daily activities. Therefore, the Court will not consider the Commissioner's argument. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The ALJ stated that the severity of Plaintiff's symptoms is not consistent with the conservative treatment she received for her impairments. A.R. 34. But the ALJ did not discuss her concern about possible side effects or her explanation that the medication made her unable to function. *See* A.R. 68. Nor is there any indication in the record or the ALJ's opinion that an alternative or more aggressive treatment plan could have been substituted. Indeed, Dr. Pullins's records state that "medication is not a cure but rather present[ed] to help control symptoms." A.R. 303.[2] Thus, the ALJ improperly rejected Plaintiff's symptoms on this basis.

### 3. The ALJ's Third Reason.

An ALJ may rely on personal observations so long as the observations are not the sole basis for discrediting Plaintiff's testimony. *Orn*, 495 F.3d at 639. Here, by her own account, Plaintiff gets leg tremors daily and they are mostly caused by standing. *See* A.R. 62. There is no indication that Plaintiff was standing during the hearing. Plaintiff also testified that the tremors are usually not visible, but mainly felt on the inside. *See* A.R. 62. Considering the nature of Plaintiff's disability, the ALJ has not explained why his brief observation of her in a hearing setting was a proper basis for discrediting her testimony. *See Ramirez v. Berryhill*, No.15-cv-02988-LB, 2017 WL 1196728, at *16 (N.D. Cal. Mar. 31, 2017) ("[T]he ALJ's observations of [the plaintiff's] lack of discomfort during the approximately 40-minute long hearing is not clear and convincing evidence to support the ALJ's adverse credibility finding, particularly where her testimony and the record suggests that her symptoms were intermittent.").

### 4. Conclusion.

---

[2] The Commissioner argues that Plaintiff's initial refusal of medication constituted a clear and convincing reason to discount her symptom testimony. *See* Doc. 16 at 9; A.R. 302. Plaintiff refused medication over concern about the side effects, and the ALJ did not discuss why that was not a valid reason for failing to take the prescribed medication. *See Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989) ("An ALJ may not rely on a claimant's failure to take pain medication where evidence suggests that the claimant had a good reason for not taking medication."). The Commissioner also argues that Plaintiff failed to take valium as directed by the Mayo clinic. But the ALJ never cited this record or discussed Plaintiff taking valium. Therefore, the Court will not consider this argument.

This error was not harmless. Plaintiff's physical limitation testimony conflicts with the RFC that Plaintiff could stand and walk for one hour each during an eight-hour day. The improperly discredited testimony could have affected the finding of nondisability.

### D. Lay Witness Testimony of Mr. Johnson.

The ALJ considered a third-party function report from Plaintiff's husband. A.R. 37. The ALJ gave his opinion little weight, finding that he lacked training to make "exacting observation as to the date, frequencies, types, and degrees of medical signs and symptoms," and that his statements were inconsistent with the objective medical evidence. *Id*.

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To discount lay witness testimony the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). An ALJ may not discredit lay witness testimony as not supported by medical evidence in the record, or because the individual is not knowledgeable in the medical or vocational fields. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). The ALJ erred in discrediting Mr. Johnson's third-party function report based on lack of medical training and inconsistency with the medical record.

### E. Remand.

The ALJ erred in his consideration of Dr. Pullins's opinions, Plaintiff's testimony, and Mr. Johnson's lay opinion. Plaintiff contends that, crediting these opinions and testimony as true, the Court must remand for an award of benefits. Docs 12 at 23; 17 at 8-9. The Commissioner counters that the appropriate remedy is a remand for further proceedings. Doc. 16 at 10-13.

"When the ALJ denies benefits and the Court finds error, the Court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, the Court determines whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, [the Court] will then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

The Court will remand for further proceedings because there is uncertainty in the record. The ALJ improperly discredited Plaintiff's treating physician, who opined that Plaintiff could not sit for more than two to three hours, would need to take breaks every twenty minutes, and could not work. The ALJ also improperly discredited Plaintiff's and her husband's symptom testimony, which indicated that Plaintiff could stand and walk less than two hours a day. But the ALJ gave proper weight to Dr. Briggs's examining opinion that Plaintiff had no limitations on sitting and could stand and walk one hour each per day. During the hearing, the VE testified that an individual who had Dr. Briggs's limitations could work. A.R. 75. The VE also testified that an individual who could sit only for two hours and stand or walk for less than two hours, or who needed to change positions every twenty minutes, would not be able to find work. A.R. 76. On remand the ALJ must reweigh the properly credited, conflicting evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 4th day of February, 2019.

_____
David G. Campbell
Senior United States District Judge